## DAVID PINGREE *vs.* GEORGE W. COFFIN & others.

A defendant in equity, against whom the bill had been taken for confessed, and who had no interest in the matter in controversy, might be examined as a witness for the plaintiff, before the passage of the statutes making parties competent witnesses.

On a bill in equity for specific performance of an agreement to assign a bond for the conveyance of land in another state, the court will entertain jurisdiction against third persons residing in that state, who have taken a conveyance of the land pending the suit with notice of the plaintiff's rights, and, being made parties to the suit, have been served with process in this state, and have once appeared and answered without objecting to the jurisdiction.

A land agent of the Commonwealth, who as such has sold a bond of the Commonwealth for the conveyance of land, and afterwards individually takes an assignment of it from the purchaser, cannot defend a suit for the specific performance of an agreement afterwards made by him to transfer the bond, upon the ground that the contracts under which he held were void as against public policy.

A party who takes a contract for the conveyance of land, with notice of an earlier right, sufficient to put him upon inquiry, cannot be deemed a purchaser without notice.

In 1842 C., as land agent of the Commonwealth, executed a bond to V. for the conveyance of land in Maine, for which V. paid partly in money and partly in promissory notes. In 1843 V. assigned to C., his heirs and assigns, all his " right, title, interest and estate in and unto " the land, to secure the payment of a note of V. for $2392; sold his remaining interest in the bond to S.; and conveyed " all his remaining interest in and to the land" to C., in fact, although not so expressed, in trust for S. In 1844 C. delivered to S. the bond of the Commonwealth, with this agreement: " In consideration of S. having given to me his promissory note for $4900, payable in twelve months, I hereby agree to assign

Pingree *v.* Coffin & others.

to S. or his assigns the annexed bond, the same having been assigned to me by V. It is provided however that S. or his assigns shall pay the note above named at maturity, and shall also pay at the treasury of Massachusetts the notes within mentioned, less the proceeds of stumpage two years past;" and S. for a valuable consideration assigned to P. all his interest in the bond and land. *Held*, that the agreement given by C. to S. was not a sale on condition or a mortgage, but a declaration of the trust upon which C. held the bond for S.; that time was not of the essence of the agreement; that the right of S. passed by his assignment to P., and that P., upon payment of the $4900, and of the amount paid to the Commonwealth, less the amount received for stumpage, was entitled to an assignment of the bond of the Commonwealth.

A bill in equity to enforce an agreement to assign a bond for the conveyance of land, in which two partners are made defendants, who claim title to the bond and land under a purchase made by the partnership with partnership funds, does not abate by the death of one of them.

Upon exceptions to a master's report, the argument is confined to the exceptions taken, and does not reopen matters fully discussed and determined by the whole court before the reference to the master.

On the death of the sole plaintiff in a bill in equity to obtain a title to real estate, his devisee cannot come in and prosecute without a bill in the nature of a bill of revivor.

Verbal errors in an interlocutory decree in equity, inconsistent with the opinion on which it is founded, may be corrected before entering a final decree.

A bill in equity to enforce an agreement to assign a bond of the Commonwealth for the conveyance of land in another state was brought against the party who made the agreement, and against two persons, residing in that state, who as partners took from him an assignment of the bond and conveyance of the land with notice of the plaintiff's right; and the three defendants were served with process in this state, and answered to the merits of the bill. Pending the suit, one partner died, leaving heirs residing out of the Commonwealth. *Held*, that the plaintiff, if he prevailed, might either have damages for the whole value of the land at the time of the conveyance from the other defendant to the partners; or a decree for so much land as the surviving partner could convey, and damages for the rest. The plaintiff elected to take the land in part of the damages, but died before final decree, devising his real estate to his executors. *Held*, that they might come in and prosecute for damages, but could not recover the land, without a bill of revivor; but that they might withdraw the election to take land, and have a decree for compensation in damages against both defendants for the share of the surviving partner, and against the defendant who made the agreement to assign, for the share of the deceased partner.

At a hearing in equity before one judge upon bill, answer and proofs, one of the grounds of defence was that the plaintiff had lost his right by laches; but the case was reserved for the opinion of the whole court on other questions, upon the decision of which the bill was to be dismissed, or further proceedings ordered, or the case referred to a master to take an account. Before the whole court the defendant argued the question of laches, as well as the questions reserved; the court, without noticing the question of laches, gave an opinion in favor of the plaintiff on the other questions, and referred the case to a master to take an account; and the parties proceeded with the hearing before him without a renewal of the objection of laches. *Held*, that after the return of the master's report, and the lapse of eight years since the original reference of the case to him, the objection of laches could not be made against entering a final decree for the plaintiff.

Technical objections to a bill in equity, not made before a reference of the cause to a master to take an account, must be deemed to have been waived or overruled.

By the practice of this court in equity, questions once argued and decided in the full court are not to be reheard at a subsequent stage of the cause unless there is apparent error.

BILL IN EQUITY, filed on the 24th of January 1851, against
George W. Coffin ; George K. Jewett and Leonard March, part-
ners under the firm of Jewett & March; John W. Veazie, and
Samuel Smith ; to enforce against Coffin, and against Jewett &
March as holding under him, a contract in writing made on
the 31st of August 1844 by Coffin with Smith, and by Smith
on the 21st of September 1844 assigned to the plaintiff. The
bill was taken for confessed against Veazie and Smith, and they
were examined as witnesses in behalf of the plaintiff by order
of court *de bene.*

At November term 1853 the case was heard before *Bigelow*,
J. upon the bill, amended bill, answers of Coffin and of Jewett &
March, exhibits and proofs. *C. B. Goodrich*, in behalf of Jewett
& March, submitted certain positions, one of which was that
" the complainant and his assignor Smith have by their laches
lost any right which they might otherwise have had to any
equitable relief." The presiding judge reserved several ques-
tions, not including this,* which were argued before the whole
court at March term 1855. The facts are stated in the opinion
which was delivered at March term 1856.

*S. Bartlett & A. B. Merrill*, for the plaintiff.

*R. Choate & L. Saltonstall*, for Coffin.

*C. B. Goodrich*, for Jewett & March.

THOMAS, J. The case came up for hearing upon the bill, an-
swers, exhibits and proofs. The plaintiff moved that the cause
should be sent to a master to take the accounts. To this the
defendants objected, on the ground that there were questions of

---

* The defendants' counsel at the argument contended that the court would
not entertain jurisdiction, because of the laches of the plaintiff and of Smith,
and of the plaintiff's conduct inducing a belief that he had abandoned his claim ;
and cited Batten on Specific Performance, 256–259, & cases cited ; *Crofton* v.
*Ormsby*, 2 Sch. & Lef. 600–604 ; *Southcomb* v. *Bishop of Exeter*, 6 Hare, 213 ;
*Taylor* v. *Brown*, 2 Beav. 180 ; *King* v. *Wilson*, 6 Beav. 124 ; *Dinn* v. *Grant*,
5 DeGex & Sm. 451 ; Adams on Eq. 88 ; *Pratt* v. *Carroll*, 8 Cranch, 471 ;
*Brashier* v. *Gratz*, 6 Wheat. 528 ; *Piatt* v. *Vattier*, 9 Pet. 416 ; *McKnight* v.
*Taylor*, 1 How. 168 ; *Kendall* v. *Almy*, 2 Sumner, 278 ; *Hatch* v. *Cobb*, 4
Johns. Ch. 559 ; *Ballard* v. *Walker*, 3 Johns. Cas. 60. The plaintiff's counsel
replied that this point was not open on the report.

law which might finally dispose of the cause, and render an account unnecessary. The parties then, by consent, discussed certain legal questions with the evidence applicable thereto. And thereupon the presiding judge reserved several questions for the opinion of the whole court, upon the decision of which the court are to enter such order or decree as equity may require, dismissing the bill, ordering further proceedings thereon, or sending the same to a master to state the facts and an account, if they shall deem it proper. In order, however, to a correct understanding of the questions submitted, it will be necessary to state, with such brevity as we may, the substance of the bill and answers, and some of the leading facts upon which they are to be determined.

The bill, as amended, (of which no abstract is given,) alleges, in substance and so far as is material to the determination of the questions before us, that on the 3d of October 1842 George W. Coffin, land agent of the Commonwealth, in his capacity as such, made a contract with the defendant Veazie, for the sale of an undivided half of a township of land in Maine ; that Veazie then paid to Coffin as such agent $2208, and gave him three notes payable to the treasurer of the Commonwealth, each in the sum of $2944, one payable October 1st 1844, one October 1st 1846, one October 1st 1848, as the consideration of the purchase ; and that on the 11th of September 1843 Veazie assigned this contract to Coffin and his heirs and assigns, to secure the payment of a note of $2392, bearing date May 15th 1843, and payable on the 15th of November then next. This assignment was as follows.

" Know all men by these presents that I, John W. Veazie of Boston, in the County of Suffolk and Commonwealth of Massachusetts, in consideration of two thousand three hundred and ninety two dollars, to me in hand paid by George W. Coffin of said Boston, Esquire, the receipt whereof I do hereby acknowledge, have given, granted, sold, assigned and set over unto the said George W. Coffin, his heirs and assigns, all my right, title, interest and estate in and unto a township of land numbered fourteen, in the sixth range of townships, west of the east line

of the State of Maine, situate and lying in the County of Pe. nobscot. Provided, however, if the said Veazie, his heirs, executors, administrators and assigns, shall well and truly pay a certain note of hand signed by said Veazie, for the sum above named, on or before the fifteenth day of November next, then this obligation is to be null and void, otherwise to remain in full force and virtue. In witness whereof I have hereunto set my hand and seal this eleventh day of September eighteen hundred and forty three. John W. Veazie. [Seal.]

" Witness : William A. Wells."

The bill then alleges that on the 21st of September 1843 Veazie assigned and conveyed his remaining interest in said contract to Coffin ; that this last assignment was in fact made to Coffin at the request and for the benefit of Samuel Smith, Veazie having previously sold to Smith his interest in the contract ; that such assignment was made directly to Coffin under an arrangement between Smith and Coffin, by which the same was to be held in trust by Coffin for Smith, subject to the payment of the sums and notes in the agreement mentioned, among which was a note of Smith, of even date with the assignment, for $4330.28, payable to Veazie or his order on the 15th of August 1844, which note had been indorsed to Coffin, and was then held by him ; and that by force of these assignments Coffin, in his individual capacity, became the owner of the contract and substituted in the place of Veazie. That contract was as follows :

" Know all men by these presents that I, John W. Veazie of Boston, in the County of Suffolk and Commonwealth of Massachusetts, hereby sell, assign and transfer to George W. Coffin of Boston, county and state aforesaid, for the consideration and upon the conditions hereinafter expressed, all the remaining interest I have in and to the land within described ; hereby fully empowering said Coffin to do in the premises whatever I might or could do by virtue of my title to the within named land. This assignment is made subject to the payment of my notes given to the State of Massachusetts for the same, as also to the payment of my note given to G. W. Coffin as

within mentioned; also subject to the payment of Samuel Smith's note to me, of even date, payable the 15th day of August next, for forty three hundred and thirty dollars and twenty eight cents, with interest. In witness whereof I have hereunto fixed my hand and seal this twenty-first day of September, A. D. 1843. John W. Veazie. [Seal.]

" Attest: John Bordman.

" It is understood that if the aforesaid note of forty three hundred and thirty and $\frac{28}{100}$ dollars is not paid at maturity, this assignment is to be null and void. John W. Veazie.

" Attest: John Bordman."

There seems to be no new consideration for this assignment but the note of Smith. The assignment is made incumbered by the debt to the Commonwealth, by the mortgage to Coffin, and upon the condition that Smith pays his note. If that is not paid, the assignment of Veazie's equity is to be null and void. Coffin would not gain an absolute title till the Smith note was paid.

The bill then alleges that on or about the 31st of August 1844, Coffin, by an instrument in writing, agreed to assign to Smith the contract for the sale of the half township, and for further assurance delivered to Smith the original contract of the Commonwealth, with the assignment thereon. The agreement of August 31st was as follows:

" Know all men by these presents that I, George W. Coffin, of Boston in the Commonwealth of Massachusetts, in consideration of Samuel Smith, of Bangor and State of Maine, having given to me his promissory note of hand for the sum of four thousand nine hundred dollars, of even date herewith, payable in twelve months, with interest, I hereby agree to assign to said Smith, or his assigns, the annexed bond, the same having been assigned to me by John W. Veazie. It is provided, how ever, that said Smith, or his assigns, shall pay the note above named at maturity, and shall also pay at the treasury of Massachusetts the notes within mentioned, less the proceeds of stumpage two years past. Boston, 31st August, 1844.

George W. Coffin. [Seal.]

" Witness: Edward A. Snelling."

The bill further alleges that between October 3d 1842 and August 31st 1844 Coffin had licensed the cutting of timber on said half township, and had received divers sums for stumpage, (the details of which it is not necessary to state;) that before said 31st of August the note of Smith to Veazie, which Veazie had indorsed to Coffin, matured, and Smith desiring to pay or adjust it, an arrangement was made by which Smith paid to Coffin the sum of $2600 in cash, and gave a new note (for the note of $4330.28, adding thereto interest and five per cent. commission, amounting to $4935, and paying $35 cash), for $4900, upon which Coffin gave him the agreement of August 31st; that Smith being unable to pay the $2600, applied to the plaintiff for aid, requesting him to pay the sum of $2600, and to take an assignment of Smith's rights under the proposed arrangement, exhibiting to the plaintiff at the time an account of the stumpage which had been rendered by Coffin; that the plaintiff did advance the $2600, and that Smith made to him an assignment of Coffin's agreement on the 2d of September 1844, in these words :

" Boston, September 2d 1844. For a valuable consideration paid me by David Pingree of Salem, I hereby assign to him all my interest in the within bond and land therein mentioned, as also the annexed bonds, hereby fully empowering said Pingree to do in the premises all matters and things which I might or could do by virtue of the same.        Samuel Smith. [Seal.]

" Witness : Mark Haskell."

The bill alleges that at the same time Smith delivered to the plaintiff the instruments before set forth ; and that said assignment was for the plaintiff's own sole use; that Coffin had notice of this assignment to the plaintiff, and of the delivery of the instruments of title, and by force thereof became the trustee of the plaintiff and bound to account to him ; that since the title of the plaintiff has accrued, Coffin has received from the land, by way of stumpage, &c., more than enough to pay the notes mentioned in the contract of August 31st, and is bound to apply such proceeds to the payment of those notes, to account to him for the balance, to assign to the plaintiff the original contract of

the land agent, free from all incumbrances, and to cause the half township to be conveyed to the plaintiff; that Coffin, after the note of Smith became due, knowing that upon a just application of proceeds, past and future, from the land, said notes would be paid and extinguished, treated with the plaintiff in relation to the plaintiff's interest in the land, agreed to collect the stumpage and apply it upon the notes, and gave the plaintiff to understand that, and caused him to act as if his rights under the contract were unimpaired. The bill insists that if any part of the conditions of the contract had not been complied with in due season, such compliance, in point of time, was waived by Coffin; and alleges that Coffin never has accounted, though often requested ; that the plaintiff has been at all times seeking, and now offers, to perform what he was bound to do under said contract; that between the 15th and 21st of January 1851 he applied to Coffin to make up and render his account, and offered to pay all sums which should be found due, and demanded a specific performance of the agreement made by Coffin with Smith, and by Smith assigned to the plaintiff; that Coffin and Jewett & March pretend that on or about the 30th of October 1849 Coffin, in his individual capacity, assigned and conveyed to Jewett & March the original contract of the land agent, for a valuable considera tion, and without notice of the rights of the plaintiff, and afterwards, as land agent, conveyed to Jewett & March the said half township, as the assignees of the contract of Veazie ; but the plaintiff says that no such assignment was ever made, or if made, ever delivered ; that Jewett & March never paid anything therefor ; and that long before any such pretended sale and conveyance Jewett & March well knew the rights of the plaintiff in the premises.

The prayer is for an account and for a specific performance of the agreement made by Coffin with Smith, for the assignment of the original contract, for a conveyance of the half township free from incumbrances, and for general relief.

The answer of George W. Coffin, in substance and so far as is material to the determination of the questions reserved, to the original bill and the amended bill is that on the 3d of October

1842 he, as land agent, made a contract with Veazie for the sale of the whole township; that shortly after its delivery, at the request of Veazie, two agreements, each for one half the township, were substituted, one to Veazie, being that set forth in the bill, and one to G. Winthrop Coffin; that these two instruments were however dated as of October 3d; that it was agreed between Coffin and Veazie that no deed should be given of either half till the terms of both were complied with. Coffin admits the assignment of the 11th of September 1843, to him as an individual, to secure the payment of $2392. He admits the assignment of Veazie to him, of the 21st of September, of his remaining interest in the half township, with the agreement that the assignment should be void unless the note of Smith should be paid at maturity.

In his answer to the amended bill, Coffin says he does not know, but believes, the note of $4330.28 was given by Smith to Veazie for his interest in the contract, and the note was indorsed by Veazie, and delivered to him with the assignment; but he denies that there was any arrangement by which the assignment was to be held in trust for Smith, other or further than this, that he understood that if Smith, or any óne for him, should pay at maturity the note of $4330.28, he was to hold the assignment for the benefit of Smith. Coffin also says that by force of the two assignments he, in his individual capacity, became substituted to the rights of Veazie.

Coffin admits that on the 31st of August 1844 he made the written agreement set forth in the bill with Smith, and delivered to him the original contract. He says that the payment of the note of $4900 at maturity was regarded by him as of the essence of the contract.

In his answer to the amended bill, he gives this statement of the origin of this agreement: The note of $4330.28 was not paid at maturity, was protested, and Veazie's liability fixed. Smith applied to Coffin for aid to pay the note and relieve himself from the forfeiture from nonpayment thereof. After negotiation, an arrangement was made by which the amount due on the note for $2390, which was cancelled, and the amount due on the

note for $4330.28 were added together, with a small commis-sion for services, and a note for $4900, payable in twelve months, given, and the balance paid in cash; Smith's right in the land was to cease if the note was not paid at maturity, and Smith was to abandon all other rights to the land and the contracts and assignments, and confine himself to the claim under the contract of the 31st of August. That contract, this answer avers, was made after repeated declarations by Coffin that he would not open to Smith an unlimited right to redeem; but he would give to Smith the right to take Coffin's position as owner of the land and contracts, provided he paid the note at maturity; if not, his relation to them should be determined; and that this was well understood between him and Smith. It then avers that the note of $4900 has never been paid.

Coffin says he has no knowledge of the assignment by Smith to the plaintiff, but believes it was made; has no knowledge whether the plaintiff paid Smith any consideration for such transfer and assignment, nor any definite or certain belief on the subject, and leaves the plaintiff to prove it. In the answer to the amended bill, he says he does not believe the money was advanced to Smith upon any statement or memorandum of account made by him, or upon anything said, done or written by him. He then avers that upon the failure to pay the note of $4900, all Smith's title, legal or equitable, became extinguished, but that, as matter of favor, he sent him a letter of March 19th 1846. He gives the letter and the answer, as follows:

" Boston, 19th March 1846. Sam'l Smith, Esq. Dear Sir, The balance due me on your order given for the purchase of the V x W logs is of long standing. Also your note for $4900, due September 1, 1845, ought to have been paid long ago, but yet remains unsettled. I have now an opportunity of remunerating myself by a sale of No. 14 R. 6, but I had rather that you would take up the obligations and manage the lands yourself. Will you attend to this without delay as something must be done shortly. Your obedient servant, Geo. W. Coffin."

" March 28th 1846. Mr. C., I received your note a day or two since, and named to Mr. Pingree the $4900 note was due. I had

supposed it paid, as I assigned the bond to him the day I took it, and have not heard it spoken of until your note; he will attend to it. He observed he intended to have all the sums due on 10, 11 and 14 paid up as soon as the stumpage was paid in, and was in hopes the surplus on 14 would pay the $4900 note.

" Yours, S. Smith."

Coffin denies that he had notice of the assignment to the plaintiff when it was made; and avers that this letter was the first notice he had of it, except that in a casual conversation with Smith he told Coffin that he had assigned all his property to the plaintiff.

In his answer to this and the amended bill, Coffin goes into a detailed statement as to stumpage. He admits the receipt of small sums, but denies that he held them in trust for the plaintiff, or that he, as land agent or as an individual, was bound to collect or apply the stumpage upon the notes. The statements as to the amount of stumpage are not material in this stage of the cause, but will become so if the case is sent to a master. He admits the plaintiff's demand for an account, but avers that it was not made until after he entered into an agreement with Jewett & March. He says he has been informed and believes that in January 1846 Jewett & March made a contract for the purchase of the half township which, as land agent, he had agreed to convey to G. Winthrop Coffin; that Jewett & March, upon information and belief, on or before October 30th 1849, were entitled to a conveyance of that half; that he then made a deed of the entire township, as land agent, to Jewett & March, retaining the deed in his own possession, expecting they might buy his half, or, if they should not, would hold it in trust for him; that in October 1850 he concluded a bargain for the sale of this half to Jewett & March for $14,500, and on the 4th of December 1850 gave to Jewett & March a written obligation in these words:

" Know all men by these presents that whereas George K. Jewett and Leonard March, of Bangor, County of Penobscot, State of Maine, have purchased of me, George W. Coffin, of Boston, State of Massachusetts, one undivided half of township

number fourteen in the sixth range of townships west of the east line of the State of Maine, for the sum of fourteen thousand five hundred dollars; and whereas they also are indebted to me for a further sum for stumpage, &c., cut on same town, as appears by account rendered, making in all the sum of sixteen thousand dollars; and whereas there is already a deed made and executed from the Commonwealth of Massachusetts to said Jewett & March of the whole of said township No. 14, 6th range, dated 30th October 1849, and recorded in the books of the land office — which said deed is now in my hands — · now it is agreed between said parties that the said G. W. Coffin shall hold said deed in his hands as security for the following conditions of payment of the above named sixteen thousand dollars, viz.: Said Jewett & March shall give said Coffin their draft on C. H. Hamm & Co., of Boston, dated December 2d 1850, and payable at either bank in Boston in three months from date, for the sum of two thousand dollars; also one other draft on same firm, of same date, payable in four months from date, at either bank in Boston, for the sum of two thousand dollars; also shall give their three several notes of hand dated at Boston, November 1st 1850, each for the sum of four thousand dollars, and payable to said Coffin, each in one, two and three years from said date, with interest annually. And the said Coffin, hereby acknowledging the receipt of the above described notes and drafts, amounting to the gross sum of sixteen thousand dollars, agrees, for the above consideration, that if said drafts are paid at maturity, and if the three notes of hand are seasonably paid, according to the tenor thereof, that he will deliver up to the said Jewett & March, or their assigns, the aforesaid deed of the Commonwealth to Jewett, for their sole use and benefit. It being also understood and agreed that, should any timber or logs be cut on said town before the notes are due, that the sum of $1.50 per ton, or $3.00 per thousand feet, stumpage, shall be paid and indorsed on said notes. It is also understood that said Jewett & March own the other undivided half of the said township, No. 14, 6th range, having bought the same of said Commonwealth, and paid for it in full.

" Boston, 4th December 1850. George W. Coffin."

Coffin says that Jewett & March paid the two drafts in said instrument mentioned, amounting to $4000; but that the three notes, amounting to $12,000, remain unpaid. He admits that he has not delivered any deed of said township, unless the instrument of December 4th shall be so regarded. Denying the right of the plaintiff to an account, he presents one of said half township with himself, excluding the payments and notes made to him by Jewett & March for the purchase money.

He admits the receipt of a letter from the plaintiff, demanding an account, dated January 16th 1851. He believes that Smith has an interest in Pingree's pretended claim, and avers that at the most Pingree's rights under the assignment are such as he would have in taking the same with full knowledge of all things set forth in the answer. He denies combination, &c.

The answer of Jewett & March denies any knowledge or belief of the agreement and assignments set forth in the plaintiff's bill, except such as is derived from the plaintiff's bill, or of the stumpage received by Coffin, or of the demand for an account and the refusal of Coffin.

They admit that in 1843 and 1844 they lumbered upon the township, under an agreement with Coffin, but aver that they had no knowledge that the plaintiff had or claimed to have any title thereto. They then allege the following facts:

On or about the first of January 1846 they, as partners under the firm of Jewett & March, purchased of G. Winthrop Coffin and held one undivided half of this township, for $30,000. In the winter of 1848–9 they lumbered by mistake on township 14, 6th range, to the value of $300 or $400, and paid Coffin one half the amount; in 1849–50 to the amount of $9000, one half of which they adjusted with Coffin. In the fall of 1849 March had a conversation and negotiation with Coffin in relation to the purchase of this half township, but did not purchase. In October 1850 March, acting for the firm, had a conversation and negotiation with Coffin as to a purchase, and on the 4th of December 1850 agreed to buy of him, as an individual and not as land agent, the half township for $14,500; Coffin agreeing, as part of the contract, to relinquish his claim of $4500 for lumbering

operations in the winter of 1849–50. They were indebted to Coffin in $2500; they have paid $4000 — they do not say when — leaving $13,000 unpaid. They say that before this 4th of December 1850, when the agreement was made, they had been informed that the plaintiff pretended to have some claim to this half township; they are unable to state when; but the information did not disclose the nature or character of the claim made by the plaintiff. When they made the purchase through March, on the 4th of December 1850, they stated through March that they had heard that Pingree claimed some interest in the half township, to which Coffin replied that Pingree had no title, and that he was under no obligation to convey to Pingree, and that the $14,500 would not reimburse him for the cost of the half township to him. Before the 4th of December 1850 Coffin informed March that he had some time before executed as land agent a deed to Jewett & March of the whole township. This deed was executed on the 30th of October 1849. These defendants further say that on the 4th of December 1850 Coffin agreed that upon the payment of the $16,000, he would deliver said deed to the defendants; that Coffin had paid to the State the entire purchase money, according to the terms of the agreement which he, as land agent, had made with Veazie, and which Veazie had failed to comply with; that the defendants lumbered upon said township in the winter of 1850–51, but their operations have not been completed, and they cannot state the account. The deed was in fact delivered by Coffin to Jewett & March just before the hearing.

In their answer to the amended bill, Jewett & March say they were, and ever since have been, citizens and residents of Maine; that no service was ever made upon Jewett except by leaving a copy of the subpœna with March; that the land is in Maine, and that the court has no jurisdiction over the defendants upon the subject matter of the bill; and they claim the same benefit as if they had pleaded the same.

They further say that they have been informed, they do not state when, that at some time Smith made a contract with Coffin for the purchase of one undivided half of township 14,

range 6, upon certain terms and conditions, for his own benefit, which these defendants have been informed and have understood that Smith did not perform. They have no knowledge or information as to the other matters stated, and leave the plaintiff to prove them. They insist that the plaintiff has no right against them, and that they are not bound to account.

To these answers a general replication was filed.

The questions reserved by the presiding judge were:

" First. Whether the contract made by Coffin with Smith, dated August 31st 1844, is to be construed as a contract of sale or as a mortgage ?

" Second. Whether the court will entertain jurisdiction against Jewett & March ?

" Third. Whether, as it was contended by the defendants, (and if the point be open to them on the pleadings,) the several contracts of Coffin with Veazie and with Smith, under which the plaintiff claims, are invalid as against public policy, and incapable of being enforced in a court of equity, upon the ground that Coffin, at the time of making the same, was the land agent of Massachusetts, or that Jewett & March were purchasers for value without notice, or upon the ground that the remedy, if any, is against Coffin for not assigning the bond, in which Jewett & March have no interest or agency ?

" Fourth. Whether the court will permit the defendants Smith and Veazie to be examined as witnesses on behalf of the plaintiff ?

" Fifth. Whether, if the bill is dismissed as to Jewett & March, such dismissal shall operate as a bar to the proceedings against Coffin ? "

Some of these questions are preliminary in their character. and may first be examined.

1. Whether the court will permit the defendants Veazie and Smith to be examined as witnesses ?* As against these defend-

---

* Upon this point the plaintiff's counsel cited, besides the authorities in the opinion, *Bradley* v. *Root*, 5 Paige, 632 ; *Holgate* v. *Palmer*, 8 Paige, 461 ; *Post* v. *Dart*, 8 Paige, 639 ; *Palmer* v. *Van Doren*, 2 Edw. Ch. 192 ; *Lufton* v. *Lufton*, 2 Johns. Ch. 625. The counsel for Jewett & March contended that they should

ants the bill has been taken as confessed. They have, apparently, no interest in the result. The assignment from Smith to the plaintiff was absolute and unconditional. Veazie was not a party to the contract sought to be enforced. Veazie and Smith need not therefore have been made parties. *Hobart* v. *Andrews*, 21 Pick. 526. The practice of examining defendants as to matters in which they were not interested seems to have been well settled in England before the *St.* of 6 & 7 Vict. *c.* 85. Where the plaintiff made a person a defendant for mere form's sake, it was a matter of course to examine such defendant as a witness in the cause. 2 Dan. Ch. Pract. 1038, 1041–1044. *Robinson* v. *Sampson,* 23 Maine, 380. We think the order passed *de bene* for the examination of Veazie and Smith should stand.

2. Whether the court will entertain jurisdiction against Jewett & March ?* These defendants are resident in the State of Maine. The bill was filed on the 24th of January 1851. A subpœna was served on March the same day. On the 9th of June 1851, the joint answer of Jewett & March was filed, and no question of jurisdiction made. On the 22d of January 1852 the plaintiff filed an amended bill. On the 11th of March 1852

---

have been made parties complainant, and that the question must be decided as it would have been, if they had been made such ; and that they should not be admitted, first, because they were called upon to support their own cause; secondly, be'cause they were called upon to support a breach of trust to which they were parties and privies.

* The plaintiff's counsel cited the 8th Rule in Chancery, [24 Pick. 412 ;] *Morgan* v. ——, 1 Atk. 408 ; *Post* v. *Neafie,* 3 Caines, 22 ; *Jackson* v. *Losee,* 4 Sandf. Ch. 381 ; *Whitbeck* v. *Edgar,* 4 Sandf. Ch. 433 ; Eden on Injunctions, 176, note. The counsel for Jewett & March cited *Massie* v. *Watts,* 6 Cranch, 148 ; *Northern Indiana Railroad* v. *Michigan Central Railroad,* 15 How. 242, 244 ; *Boswell* v. *Otis,* 9 How. 348 ; *Picquet* v. *Swan,* 5 Mason, 35 ; *Lawrence* v. *Smith,* 5 Mass. 362 ; *Brown* v. *Webber,* 6 Cush. 564, 569 ; *Spurr* v. *Scoville,* 3 Cush. 578, 580 ; *Rice* v. *Hale,* 5 Cush. 238 ; *Commonwealth* v. *Summer,* 5 Pick. 366, 367 ; *Flack* v. *Holm,* 1 Jac. & Walk. 405 ; *Morris* v. *M'Neil,* 2 Russ. 604 ; *Blaydes* v. *Calvert,* 2 Jac. & Walk. 211 ; *Raynes* v. *Wyse,* 2 Meriv. 472 ; *Boehm* v. *Wood,* Turn. & Russ. 332 ; *De Carriere* v. *De Callone,* 4 Ves. 577 ; *Gibbs* v. *Mermaud,* 2 Edw. Ch. 482 ; *Cowdin* v. *Cram,* 3 Edw. Ch. 232 ; *Jenkins* v. *Parkinson,* 2 Myl. & K. 5 ; *Baker* v. *Haily,* 2 Dick. 632 ; *Robertson* v. *Wilkie,* 2 Dick 786 ; *Moore* v. *Meynell,* 1 Dick. 30 ; *Jernegan* v. *Glass,* 1 Dick. 107.

a subpœna was served on Jewett. This was done on applica-
tion to the court, and without notice to the counsel of Jewett &
March. Before this, to wit, on the 22d of January 1852, Jewett
& March filed their answer to the amended bill, in which the
question of jurisdiction is first made. Whether any and what
decree shall finally be made against Jewett & March must de-
pend, of course, on the precise state of facts found. Upon the
question of jurisdiction, it seems to be sufficient to say that the
bill alleges, and evidence is offered tending to show, that at the
time of the filing of the bill and the service upon the defendant
March, the partner of Jewett, the defendant Coffin held the
assignment of the original bond of the Commonwealth for the
conveyance of the half township ; that in relation to that bond
Coffin had made the contract with Smith of August 31st 1844,
and that contract had been assigned to the plaintiff. The plain-
tiff avers that Coffin was bound to assign the bond of the Com-
monwealth to him ; that the condition to be performed by Smith
under the contract of August 31st 1844, had been, in part at
least, performed, and that the plaintiff was the equitable owner
of that original bond ; that the agreement made by Coffin with
Jewett & March still rested in contract, the consideration not
having been paid and the deed not delivered ; and still further,
that they entered into the contract with full knowledge of the
rights claimed by the plaintiff; that their present title under the
deed of Coffin as land agent has been obtained while the bill was
pending and in disregard of it. These conclusions seem to be,
in substance at least, well grounded. The legal title to the land
being in Jewett & March, they are necessary parties to the bill.
The rule seems to be well settled that necessary parties to a bill
must be inserted, though nonresidents; that they may be made
answerable if they come within the jurisdiction of the court;
and that the omission to make them parties would be good
ground of demurrer. 1 Dan. Ch. Pract. 234, 237, 238. *Brookes*
v. *Burt*, 1 Beav. 109. The fact of the *situs* of the land being
without the Commonwealth does not exempt the defendants
from jurisdiction, the subject of the suit being the contract, and
a court of equity dealing with persons, and compelling them to

execute its decrees and transfer property within their control, whatever may be the *situs.* These defendants, having been found within the jurisdiction of the court, and served with its process, and having appeared and answered originally without objection to the jurisdiction, will not be presumed to be without its jurisdiction so that its decrees cannot be executed. If such event should occur, it will be time to determine what remedies the plaintiff might have. But it seems that their personal property within the Commonwealth might be sequestered. 2 Dan. Ch. Pract. 1236, 1237. The court might retain the bill, and, under the general prayer for relief, mould the decree to one of damages for nonconveyance. *Andrews* v. *Brown,* 3 Cush. 136. *Peabody* v. *Tarbell,* 2 Cush. 226. And a decree of this court might be a 'foundation for other courts to compel performance specifically.

3. Whether, if the bill be dismissed as to Jewett & March, such dismissal shall operate as a bar to the proceeding against Coffin ? It might prevent a decree for specific performance against Coffin, but if he had put it out of his power to assign the contract or convey the estate, he would be liable to a decree for the payment of damages. *Peabody* v. *Tarbell,* 2 Cush. 226. But as the court are of opinion that the bill should not be dismissed as to Jewett & March, the further consideration of this question becomes unnecessary.

4. Whether, if the question be open on the pleadings, the contracts of Coffin with Veazie and with Smith, under which the plaintiff claims, are invalid as against public policy, on the ground that Coffin, at the time of making the same, was the land agent of Massachusetts ? * This objection is not taken in

---

* The counsel for Jewett & March contended that an officer of the Commonwealth, charged with the protection of its rights under a certain obligation into which it had entered, could not acquire any interest, legal or equitable, in that obligation, which equity would enforce in favor of himself or his assignee, and therefore the plaintiff, upon his own statement of his case, could not maintain this suit; and cited *Grover* v. *Hugell,* 3 Russ. 428 ; *Greenlaw* v. *King,* 3 Beav. 61 ; Adams on Eq. 183, 184; *Fuller* v. *Knight,* 6 Beav. 211; *Duke of Brunswick* v. *King of Hanover,* 6 Beav. 1, & 2 H. L. Cas. 1 ; *Hamilton* v. *Wright,* 9 Cl. &

the answers. It is extremely doubtful whether it can be made for the first time after the pleadings have been closed and the proofs taken and published. But if it had been seasonably taken in the answer, it would not have availed the defendants. The original contract between Coffin, as land agent, and Veazie appears to have been made for an adequate consideration, and in good faith. The entire consideration has been received by the Commonwealth. The State has not been prejudiced by these assignments, and, so far as the evidence goes, the State is content. It is the case of a trustee acquiring by purchase an interest in the trust property. The *cestui que trust* may avoid the purchase. But he may affirm it; and if he does not avoid it, no one else can. The position of this defendant on this point is, to say the least, not a very graceful one — the confession of a wrong which nobody has charged, not with a view to reparation or atonement, but simply to defeat the claim of one holding under him by fair contract and for a valuable consideration. No considerations of public policy require or permit us to sanction such a defence. The claims of a sound public policy are met by permitting the principal to avoid any acts of the agent by which he seeks to acquire an interest in the trust property adverse to his own. But to avoid them is the right of the principal and not of the agent. He is bound, and the principal is at liberty to avoid or affirm. The acts of the defendants, under which the

---

Fin. 123; *Cook* v. *Collingridge*, Jac. 620, 622; *Martlock* v. *Buller*, 10 Ves. 303; *Williams* v. *Steward*, 3 Meriv. 506; *Harnett* v. *Yielding*, 2 Sch. & Lef. 554; *Parken* v. *Whitby*, Turn. & Russ. 366; *Whelpdale* v. *Cookson*, 1 Ves. Sen. 9; *White* v. *Cuddon*, 8 Cl. & Fin. 787, 788, 791; *Charter* v. *Trevelayn*, 11 Cl. & Fin. 714; *Thomson* v. *Thomson*, 7 Ves. 470; *Ex parte* Lacey, 6 Ves. 625; Batten on Specific Performance, 183, 221, 222 & cases cited; 2 Sugden on Powers, (6th ed.) 132; *White* v. *Franklin Bank*, 22 Pick. 181; *Fuller* v. *Dame*, 18 Pick. 472; *Litchfield* v. *Cudworth*, 15 Pick. 30; *Church* v. *Marine Ins. Co.* 1 Mason, 345; *Creath* v. *Sims*, 5 How. 204; *Marshall* v. *Baltimore & Ohio Railroad*, 16 How. 314; *Michoud* v. *Girod*, 4 How. 503; *Veazie* v. *Williams*, 8 How. 151; *Wylie* v. *Cox*, 15 How. 420. The plaintiff's counsel cited 1 White & Tudor's Lead. Cas. in Eq. (1st Amer. ed.) 144, note to *Fox* v. *Macreth*; *Jennison* v. *Hapgood*, 7 Pick. 1, and 10 Pick. 111; *Sharp* v. *Taylor*, 2 Phil. Ch. 801; Story on Agency, § 236.

plaintiff claims, cannot affect or impair the rights of the Commonwealth, and neither Coffin nor his assignees can be compelled to convey any greater title than they have. If that was a title which the Commonwealth could defeat or avoid, it would be the misfortune of the plaintiff. But we do not intend to be understood that there is any color for the suggestion that the Commonwealth could now defeat or avoid these conveyances. It is sufficient for this case to say that the defendants cannot.

5. Whether Jewett & March are purchasers without notice ?[*] Jewett & March knew before their contract with Coffin that the plaintiff pretended to have a claim, though its nature was not explained. They had what was sufficient to put them upon inquiry, and that was good notice. They knew how Coffin had acquired his title, and that it was through Veazie, and that they were buying of Coffin, not as land agent, but as an individual. The written contract which they received from Coffin on the 4th of December 1850 discloses, sufficiently at least to put them on their search, the nature of the title under which they were to hold. The deed which they took, on its face, discloses the actual title they took " as assignees of John W. Veazie, the original contractor for the premises hereafter described." They could be assignees only through the mesne assignments. As early as January 1846, they took an assignment of the bond of the State to G. Winthrop Coffin, and that bond disclosed the existence of the bond to Veazie. Their assignees, jointly with Smith, gave permits to lumber on the township. They admit in their answer that they had been informed of Coffin's contract with Smith, but do not state when. They have made admissions in pais of their knowledge of the plain-

---

[*] The plaintiff's counsel cited Kennedy v. Green, 3 Myl. & K. 719, 721, 722; Carr v. Hilton, 1 Curt. C. C. 393 ; Curtis v. Mundy, 3 Met. 405 ; Vattier v. Hinde, 7 Pet. 271 ; Boone v. Chiles, 10 Pet. 210 ; Tompkins v. Ward, 4 Sandf. Ch. 610 ; Jackson v. Caldwell, 1 Cow. 641 ; Freeman v. Deming, 3 Sandf. Ch. 327 ; Sugden on Vendors, (11th ed.) 1070. The counsel for Jewett & March cited Rev. Sts. c. 10, § 5 ; c. 59, §§ 30, 31 ; Pomroy v. Stevens, 11 Met. 244; M'Mechan v. Griffing, 3 Pick. 149 ; Curtis v. Mundy, 3 Met. 405; Rogers v Jones, 8 N. H. 264 ; Wilde v. Gibson, 1 H. L. Cas. 605 ; Adams on Eq. 88

tiff's title, and of Smith's. At the time the bill was filed their contract was executory. No deed had been delivered or title passed. Jewett & March are not purchasers without notice.

6. The answer to the question whether the remedy of the plaintiff, if he has any, is not against Coffin for not assigning the bond, in which Jewett & March have no interest or agency, depends upon the other questions, what is the nature of the contract of August 31st 1844, and whether Jewett & March are assignees with notice. The existence of a legal right to sue Coffin for damages is no answer to the bill for specific performance. The remedy is a double one.

7. The question remaining therefore is as to the nature of the contract made by Coffin with Smith on the 31st of August 1844. Is it a contract of sale or mortgage ? *

The subject matter of the agreement was the contract of the Commonwealth for the conveyance of the half township. It is set out in the bill as an agreement to assign that contract to Smith and his assigns, accompanied by the delivery of the original contract to Smith and the mesne assignments.

The history of the title before the time when this agreement was executed, had been this : The contract was made with Veazie by Coffin as land agent on the 3d of October 1842. On the 11th of September 1843 this contract was mortgaged to Coffin to pay a note for $2392, bearing date May 15th 1843. On the 21st of September 1843 a second assignment is made and indorsed on the contract, in which Veazie sells, assigns and transfers to Coffin, for the consideration and upon the conditions thereinafter expressed, all the remaining interest he had in and to the land within described. This assignment is made subject to the payment of the notes given to the Commonwealth, the payment of the note of $2392 which the mortgage

---

* The counsel for Coffin contended that this was a conditional contract, and that by a failure to perform the condition at the time appointed a forfeiture ensued, which had not been waived; and cited *Perry* v. *Meddowcroft*, 4 Beav. 197; *Guest* v. *Homfray*, 5 Ves. 818; *Bradstreet* v. *Clark*, 21 Pick. 389; *Tufts* v. *Kidder*, 8 Pick. 537; *Hollingsworth* v. *Frye*, 4 Dall. 345; *Hepburn* v. *Auld*, 5 Cranch, 270; Adams on Eq. 87, 88.

of September 11th was given to secure; and also subject to the payment of " Samuel Smith's note to me, of even date, payable on the 15th of August next, for $4330.28, with interest." This note of Smith to Veazie was given by Smith to Veazie for his interest in the contract over and above the first mortgage to Coffin. No other consideration seems to have moved Veazie to this conveyance except another small note of $169.72, making the whole $4500. The note of $4330 28, so given by Smith to Veazie, was indorsed by Veazie, and then lent to Smith for his accommodation. Smith procured Coffin to discount the note, and as security to Coffin caused Veazie to make to Coffin the assignment of the equity of redemption in the contract of the Commonwealth. Coffin then, by this second assignment of Veazie, acquired a second mortgage upon this contract of the Commonwealth, as security for the note of $4330.28, which he had discounted. Beyond this he received the equity of redemption over and above the two mortgages. That equity he held in trust for Smith, who had purchased the whole of Veazie's right.

These facts, which seem to be well established by the proofs, may help to explain a contract in itself and upon its face unintelligible and selfcontradictory. The conveyance is subject to the payment of the notes to the Commonwealth, the note to Coffin, and the note from Smith to Veazie, indorsed by Veazie. Then the provision that if the note of $4330.28 is not paid at maturity the assignment shall be null and void can be made consistent only by understanding it to apply to the instrument as a conveyance in trust for Smith; as if Veazie had said, " I sold this bond or contract to Smith for this note; I convey to you, Coffin, in trust for Smith; but if Smith does not pay the note at maturity, and I have to pay it, then, as the consideration for the assignment will have failed, the assignment itself shall be void." The note was not in fact paid at maturity, but Veazie was not compelled to pay it. That note fell due on the 15th of August 1844. In the mean time, in the lumbering operations of the winter of 1843–4, Smith acted, and was recognized by the defendants, as the equitable owner of the half township. About a fortnight after the maturity of the note given by Smith to

Veazie and indorsed to Coffin, a negotiation took place between Coffin and Smith. On the 31st of August an arrangement was made. The note secured by the first mortgage, and interest, and the note of Smith to Veazie, indorsed by Veazie to Coffin, and interest, were added together, with certain commissions charged by Coffin. The old notes were cancelled, $2600 was paid in cash by Smith, a new note given for the balance of $4900, and the agreement of August 31st 1844 signed and delivered.

The state of things then on the 31st of August was this: $2600, deducting commissions, of the mortgages were paid; $4900 remained unpaid, for security for which Coffin still held the contract of the State. The equity of redemption belonged to Smith, and was held by Coffin in trust for him. Coffin was still mortgagee to the amount of the $4900. The equity of redemption he held in trust for Smith. In his own right he was but mortgagee. He held the equity of redemption in trust. For it Smith had paid somewhere about $2600. For the $4900 Coffin agreed to wait a year.

This contract of August 31st 1844 was not then a sale on condition. Coffin was not the absolute owner. In his own right he was but mortgagee. It was not a mere agreement to assign a chose in action for a consideration to be paid at a future time; for Coffin was not the equitable owner, he only held it as security for the payment of the balance of his mortgages. This instrument did not substantially change the relations of the parties; it only declared them. It was an admission by Coffin of the extent of his claim upon the contract, and may be said to serve both as a defeasance (if any were necessary), and as a declaration in trust. After this instrument, as before, Coffin, in his own right, was but mortgagee. The instrument served what, in view of the facts, was his great purpose, the giving to Smith the written evidence of his interest in the estate. The provision that the note shall be paid at maturity has the force, and no more, of the same provisions in deeds of mortgage. Time is not of the essence of the contract.

The $2600 paid by Smith to Coffin was advanced to him by

the plaintiff, and on the 2d of September 1844 Smith assigned to the plaintiff, not his interest in this instrument of August 31st 1844, but all his interest in the bond or original contract of the Commonwealth and the land therein mentioned.

Pingree had what ·Smith had, the right to redeem this contract or chose in action from the mortgage, and upon payment of the $4900, and the amount paid the Commonwealth, less the amount received for stumpage, to have an assignment of the contract made to him. The mortgage has not been foreclosed, the right still exists. Coffin's right in this contract was but the right of a mortgagee. Jewett & March took from Coffin in equity no higher title than he had in his own right, and that was the title of a mortgagee. *Decree accordingly.*

The following interlocutory decree was then entered : " This cause came on to be heard and debated on bill, answer and proofs, in presence of the counsel of the respective parties, and upon the questions reserved in the report thereof ;· and upon such hearing this court doth think, and doth so order and declare, that the order heretofore passed *de bene esse* in the cause, that the complainant be at liberty to examine as witnesses certain John W. Veazie and Samuel Smith, two of the parties named in the bill of complaint, stand confirmed.

"And this court doth further declare, that said George K. Jewett and Leonard March, two of the defendants named in said bill, having been duly served with process, and appeared and answered thereto, have become parties to said suit and subject to the jurisdiction of this court therein ; and doth further declare that said Jewett and March are not *bona fide* purchasers without notice of the lands described in said bill, but did receive a conveyance thereof and do now hold the same with notice of and subject to the plaintiff's rights therein.

" And this court doth further declare, that the obligation or contract of said defendant George W. Coffin to and with the defendant Samuel Smith, sealed with the seal of said Coffin, and bearing date the thirty-first day of August in the year eighteen hundred and forty four, is, as to the said defendants Coffin and Jewett and March, valid, and not impaired or in any

manner affected by the fact that at the time of the execution and delivery thereof the said defendant Coffin exercised the office of land agent of the Commonwealth of Massachusetts; and that said contract has been duly and legally assigned to the plaintiff.

" And this court doth further declare, that the instrument in writing, bearing date the thirty-first of August eighteen hundred and forty four, signed by said Coffin, and delivered to said Smith, was a mortgage, under and by virtue of which the said Coffin and his assignees with notice held the bond or contract of the Commonwealth as mortgagees, and subject to the right of said Smith or his assignee to redeem the same in equity.

" And in pursuance of the agreement of the parties, which makes part of the report of said cause, this court doth order that the cause be referred to William J. Hubbard, one of the masters in chancery of said county of Suffolk, to take an account of all sums due the said Coffin, or his assignees, the said Jewett and March, as mortgagees of said bond or contract of the Commonwealth for the conveyance of said half township of land, with interest thereon, and of all sums received, or which with the use of common care or prudence might have been received by said defendants Coffin or Jewett and March on account of said bond or contract, or from the use or occupation of said land by said defendants, or persons acting under their license or authority, stating in separate accounts the amounts received or which with due care ought to have been received by said Coffin and by said Jewett and March respectively, with interest thereon.

" And it is further ordered, that said defendants produce and exhibit to said master all books of account, writings or vouchers, permits and scale bills, in their possession or control, which said master shall find necessary for the taking and stating said accounts. And if either party so desire, the master is directed to report any facts found by him (results of evidence, not evidence,) pertinent to the matters hereby submitted. And the master may, if he see fit, on the motion of either party, examine

either of the other parties in the premises.    And all further directions are reserved until the coming in of the master's report."

In June 1857 March died, and his death was suggested of record.    At March term 1858 Jewett represented to the court that March had died intestate at his domicil in Maine, leaving as his heirs a widow and four children, three of them under age, citizens and residents of that state ; and moved for a decree declaring this suit abated against Jewett and March.    Coffin also moved for a similar decree.    These motions were argued at this term.

*Goodrich,* for Jewett.    The suit has abated as to the interest of March, and a decree to that effect is a matter of course.    As his interest does not survive to his co-litigants, the suit has become defective as to them, and cannot proceed, except by order or decree of the court, upon a bill of revivor, bringing in the representatives of March, who are interested in the accounts of the rents and profits of the township, which the bill proposes to have taken.    *Russell* v. *Clark,* 7 Cranch, 98.    *Marshall* v. *Beverley,* 5 Wheat. 313.    *Mallon* v. *Hinde,* 12 Wheat. 193.    *Shields* v. *Brown,* 17 How. 139, 140.    *Towle* v. *Pierce,* 12 Met. 332. *Leggett* v. *Dubois,* 2 Paige, 211.    *Thorpe* v. *Jackson,* 2 Y. & Col. Exch. 553.    *Glassington* v. *Thwaites,* 2 Russ. 458.    *Brown* v. *Higden,* 1 Atk. 291.    *Brookes* v. *Burt,* 1 Beav. 106.    *Fell* v. *Brown,* 2 Bro. C. C. 276.    Coop. Eq. Pl. 65.    Story Eq. Pl. § 369.    1 Smith on Eq. (2d ed.) 512, 516, 521.    Calvert on Parties, (ed. 1847,) 2, 3, 13, 16, 71, 74, 87, 88.    Welf. Eq. Pl. 67 68, 79.    Adams on Eq. 51, 53, 77–81, 90, 91, 404, 405.    Hoffm. Ch. Pract. 373.    *Tobey* v. *County of Bristol,* 3 Story R. 800. The suit will be stayed absolutely, because it cannot be revived against the representatives of March, who are citizens of Maine, and beyond the jurisdiction of the court.    *Spurr* v. *Scoville,* 3 Cush. 579, 581, 583.    *Whitmore* v. *Oxborrow,* 1 Collyer, 91.    *Clarke* v. *Tipping,* 16 Beav. 12.    If the representatives of March were within the Commonwealth and subject to its jurisdiction, the suit would be stayed until they attained the age of twenty one years.    *Whitney* v. *Stearns,* 11 Met. 319.    *Coffin*

v. *Heath,* 6 Met. 76. March having died, and the land being out of the Commonwealth, the plaintiff can be relieved, in equity, only to the extent of one half of his supposed right, without prejudice to his legal remedy for the other half; and therefore this court, sitting in equity, will give no relief, leaving him to pursue his legal remedies entire. *Thomas* v. *Dering,* 1 Keen, 743, 746. *Kimberley* v. *Jennings,* 6 Sim. 340. *Dietrichsen* v. *Cabburn,* 2 Phil. Ch. 57. *Gervais* v. *Edwards,* 2 Dru. & War. 80. *Graham* v. *Oliver,* 3 Beav. 128. *Long* v. *Yonge,* 2 Sim. 386.

*E. F. Hodges,* for Coffin.

*Bartlett & Merrill,* for the plaintiff, cited *Andrews* v. *Brown,* 3 Cush. 130; *Peabody* v. *Tarbell,* 2 Cush. 226; *Burnside* v. *Merrick,* 4 Met. 537; *Dyer* v. *Clark,* 5 Met. 562; *Fall River Whaling Co.* v. *Borden,* 10 Cush. 458; *Denton* v. *Stewart,* 1 Cox Ch. 258.

THOMAS, J. By the decree already entered in the cause, it has been settled that the original contract for the conveyance of land by the Commonwealth was held by Coffin in trust; that the plaintiff had the right to enforce the trust; that Jewett and March were purchasers with notice and took the conveyance subject to the equitable right of Pingree. The sale to Jewett and March was to them as partners; the contract being made by March for the firm, the land paid for by partnership funds and all the work of lumbering done by the firm. Both March and Jewett have appeared in the cause and submitted themselves to the jurisdiction of the court.

We are of opinion that upon these facts the suit does not abate as to Jewett the surviving partner. As such surviving partner he may be compelled ·to convey his half of the estate and to account for the rents and profits received by the firm. Whether the court may work out further equitable relief by compelling Jewett to assign his equitable interest in the estate as surviving partner, it is not necessary at this time to determine.

A motion has also been made for a decree that the suit should abate as to the defendant Coffin. But this motion cannot prevail. Though specific performance of the agreement or enforce-

ment of the trust may have become impossible, the bill may be retained and a decree for compensation made.

*Motion overruled.*

In December 1861 * the master made his report, to which the defendants filed exceptions, and the case was reserved upon the report and exceptions for the consideration of the whole court, and was argued in November 1862 by *Hodges*, for Coffin, by *Goodrich & H. W. Paine*, for Jewett, and by *Bartlett & Merrill*, for the plaintiff.

The counsel of Jewett contended that upon the exceptions to the master's report, all matters necessary to a final decree might be examined or reconsidered by the court; and cited *Fourniquet* v. *Perkins*, 16 How. 85, 86, and 6 How. 206 ; *Coiron* v. *Millaudon*, 19 How. 115; *Foster* v. *Goddard*, 1 Black, 506 ; *Gregory* v. *West*, 2 Beav. 543.

But THE COURT *held*, that all matters fully discussed, and determined by the full court, upon the previous hearings, before the reference to the master, could not be re-opened ; and that the defendants must confine themselves to the exceptions which they had filed to the master's report.

Upon the hearing, THE COURT were of opinion that the exceptions to the master's report were either unsupported in matter of fact, or inconsistent with the law as laid down in the original opinion of the court, and             *Overruled the exceptions.*

The plaintiff moved for a further decree.

BY THE COURT.    The exceptions to the master's report being overruled, the bill stands for further directions.    By the death of March, during the pendency of the suit, it has become impossible to enforce specific performance of the contract as to that part of the land which vested in him ; for it has descended to his heirs, who are not within the jurisdiction of the court, and the land is without the jurisdiction of the court.    But it appears that Jewett and March were partners, and purchased this real estate as

---

* For the materials of the report of the subsequent stages of this cause, the reporter is indebted to his successor, Mr. Allen.

such, and took a conveyance by which it vested in them as tenants in common ; therefore the plaintiff is entitled to his remedy against Jewett as surviving partner, as well as against Coffin ; and he can obtain an adequate remedy against them. He may have damages for nonconveyance, as stated in the opinion of the court in this case, *ante,* 305. Or he may insist on having all the land that Jewett can convey, with a compensation for the remainder. Fry on Spec. Perf. § 299. 1 Story on Eq. § 779.

He elects the latter remedy ; and as Jewett holds one undivided fourth part of the land, and is able to convey it; and as the value of the other undivided fourth part now vested in March's heirs is not ascertained, the case must be recommitted to the master to settle the form of the conveyance from Jewett to the plaintiff, and to ascertain and report the value of the other undivided fourth part of the land. All further directions must be reserved till the coming in of his report.

*Ordered accordingly*

In March 1863, after a partial hearing before the master, Pingree died ; and at April term 1863 Asa Pingree and others presented a petition to this court, representing that he deceased testate, leaving a will which had been allowed by the probate court, by which the petitioners were appointed executors, that letters testamentary had been issued to them, and they had accepted the trust and given bond according to law : and praying to be admitted as executors to prosecute this suit to final judgment. This petition was granted by *Merrick,* J., without notice to the defendants. Coffin and Jewett protested against further proceedings before the master on the ground that the suit had abated by Pingree's death. But the master proceeded with the hearing, and reported that Pingree devised his real estate to his executors in trust, with power of sale, and they claimed to be entitled as such executors to a conveyance from Jewett ; and the master reported a form of such a conveyance. Pingree's executors moved for a decree, and upon this motion the case was reserved for the consideration of the full court, and argued in November 1863.

*Bartlett & Merrill*, for the executors, cited Rev. Sts. *c.* 107, § 31; Gen. Sts. *c.* 113, §§ 3, 26; *c.* 123, §§ 1, 18, 20; *c.* 127, § 5; *c.* 140, § 33; 7th Rule in Chancery, [14 Gray, 353]; Prov. Sts. 4 & 6 W. & M., Anc. Chart. 223, 276; *Farnam* v. *Brooks*, 9 Pick. 212; *Wood* v. *Leland*, 1 Met. 387; *Williams* v. *Campbell*, 3 Met. 209; *Baker* v. *Atlas Bank*, 9 Met. 195; *Crease* v. *Babcock*, 10 Met. 529; *Moore* v. *Boston*, 8 Cush. 274; *Attorney General* v. *Federal Street Meeting-house*, 3 Gray, 62.

*Goodrich & Paine*, for the defendants, cited Story Eq. Pl. §§ 364, 379; Mitf. Eq. Pl. 71, 80, 97; Adams on Eq. 405, 406; Calvert on Parties, 133; *Douglass* v. *Sherman*, 2 Paige, 360; *Putnam* v. *Putnam*, 4 Pick. 142.

The following decision was made in March 1864.

DEWEY, J. By the death of David Pingree, the sole plaintiff in this bill, all further proceedings thereon were suspended, and until a new party intervened no proceedings could properly be had before the master under the interlocutory decree by which the case had been committed to him. The defendants object that the suit could only be revived by a bill of revivor, or by an original bill in the nature of a bill of revivor.

That, in the ordinary course of proceedings in equity, where no local statute or rule in chancery intervenes, this would be the only mode to continue in force a bill in equity, in a case like the present, would seem to be unquestionable.

At law, the course of legislation in this commonwealth has been such as to indicate the purpose of the legislature very broadly and liberally to secure the rights of executors and administrators, heirs at law and devisees, to prosecute actions in their names when the sole plaintiff has deceased and rights have vested in them. Thus in actions real or mixed, the heir or devisee may appear and prosecute. In a petition for partition of real estate, the like rule exists. Gen. Sts. *c.* 127, §§ 13, 18. The rule does not seem to be confined to personal estate, or to personal representatives, strictly so called, but allows a party to a new intervening title, acquired pending the action, to appear, as in the case of devisees. But a distinction seems to be well established between the terms, " heir of the deceased

party," and "devisee." *Brown* v. *Wells*, 12 Met. 501. A pro-
vision authorizing the former to prosecute the original action
would not confer a like right on a devisee. *Drake* v. *Curtis*,
1 Cush. 395.

To some extent this legislation has been directly extended to
bills in equity, as in reference to the decease of a sole plaintiff
in a bill to redeem a mortgage. Gen. Sts. *c.* 140, § 33. But no
statute exists, directly providing for a case like the present. If
the new party in interest can thus appear and prosecute the
suit, it must be either because the court holds that in equity effect
may be given to the statutes regulating actions at law, where
the like reasons would exist, and they may be considered as
falling within the spirit of the law.

It is urged that by force of the statute, and the rules of this
court regulating the practice in chancery, these executors were
properly admitted to prosecute this bill. By the Gen. Sts *c.* 113,
§ 26, this court is authorized to " make rules regulating the prac-
tice and conducting the business of the court in matters of
equity, so as to simplify the proceedings, discourage delays,
essen the expenses and burdens of litigation, and expedite the
decision of causes." Under this authority the court has pro-
vided by the seventh rule in chancery, that " when any party
shall die, on the same being suggested in writing and entered on
the docket, it shall be lawful for the clerk, during vacation, upon
application, to issue process to bring into court the representa-
tive of such deceased party." As the rule is a mere authority
for the clerk to act in vacation, and in the absence of the court,
it must of course be understood that the court would itself exer-
cise the like power in term time, or when sitting at chambers.

But the point of the inquiry here is whether the authority to
summon in the representative of the deceased party would em-
brace the case of one standing merely in the relation of devisee
of such party. In the present case, the parties were admitted to
prosecute this bill upon a petition setting forth merely that they
were the lawful executors of the will of David Pingree. This
was admitting them as the legal representatives of their testator.

If this bill were one solely relating to personal property, we

do not see why it would not be proper to allow the executors to come in and prosecute the same. ' This bill, however, seeks to obtain a title to real estate. The further inquiry is how far that affects their, right to prosecute. In real estate, under our statutes, title may in some cases be acquired by the executors. It may be so by a levy on land of a debtor of the testator. They may institute a real action to try the title to land supposed to have been fraudulently conveyed. As already stated, they may prosecute a bill to redeem lands of their testator from a mortgage. In all these cases, if a title vests in the executors, they hold it as trustees for those interested.

In the present case, the plaintiffs seek also for a decree for payment by the defendants of money for breach of the defendants' contract and incapacity to perform a contract to convey, by reason of a portion of the real estate having been so conveyed away by the defendants as to render it impracticable to perform their specific contract as to the whole land.

So far as the executors, in their mere capacity of executors, are competent to prosecute this action, their admission to do so was proper. Our statute and rule in chancery provide for the case. They authorize a mode of proceeding as a substitute for what is termed a simple bill of revivor. The only question in such cases is whether the party has the legal standing of a representative of the deceased party. This would be the case of an executor, and also that of an heir at law. As to such, the mode of proceeding was correct and well authorized.

But, looking at the case as presented by the decree asked for, a serious objection arises. The executors claim an interest in the relief sought by the present bill under the further relation of devisees under the will of David Pingree. Now, if the maintenance of this bill, and their rights to the proposed decree thereon, depend upon the fact of their interest as devisees of the estate, something more is necessary than a naked bill of revivor, or, what is equivalent under our practice, a mere application to the court by an executor for leave to appear and prosecute upon a suggestion of the death of the party. When, upon the death of the sole plaintiff in a bill in equity, his interest has

been transmitted to another as devisee of his estate, such dev-isee must come in by a bill in the nature of a bill of revivor. Such bill must allege the newly acquired interest, and this alle-gation may be litigated. The bill should state the manner in which the interest of the party deceased has been transmitted. Story Eq. Pl. 386. Mitf. Eq. Pl. 97.

As devisees under the will of David Pingree, the executors have no standing in the case, not having filed a proper bill to evive the suit for their benefit as such devisees.

*Ordered accordingly.*

Smith died in January and Coffin in March 1864, while the question of the right of Pingree's executors to come in was un-der advisement; and on the 7th of September the executrix of Coffin's will was summoned in to defend the suit. Pingree's executors moved for leave to withdraw the election heretofore made, and have compensation in damages against Coffin and Jewett instead of a conveyance of the land. This motion was argued in November 1864.

*Bartlett & Merrill,* for the plaintiff.

*B. R. Curtis & Hodges,* for Coffin's executrix.

*Goodrich,* for Jewett.

BY THE COURT. The objection to the motion for a with-drawal of the election heretofore made by the plaintiff, Pingree, to take land in part instead of an entire compensation in dam-ages, is founded on misapprehension of the real nature and purpose of the suit, and of the remedy to which the plaintiff was originally entitled under his averments in the bill.

No doubt in a court of equity, when a suit is brought for spe-cific performance of an agreement to convey land, the land is to be treated as the property of the person to whom it was agreed to be conveyed. He is the equitable owner, and is entitled to all the benefits arising therefrom, and must take the land with all the burdens properly incident thereto; and if he dies pending the suit, the equitable title vests in his heirs or devisees with the benefits of the contract. It may be treated as land in all stages of the case.

But this is not a bill for the specific performance of an agree-ment to convey land. On recurring to the instrument set out in the original bill, it appears that it was an agreement to assign a contract for the conveyance of land from the Commonwealth of Massachusetts. The title to the land was in the Common-wealth, and specific performance of that contract was not sought by the bill, nor capable of being enforced by this court. The whole purpose of the bill was to procure an assignment from Coffin of that contract, so that on getting such an assignment, the plaintiff could go to the Commonwealth for the land. Jewett & March were made parties, upon the ground that they had, with knowledge of the plaintiff's rights, contracted with Coffin for the purchase of the land, and the delivery to them of the deed from the Commonwealth. By afterwards obtaining the conveyance of the land, pending the suit, through fraud and conspiracy with Coffin, they have rendered any assignment to the plaintiff of no value, and made themselves liable to him.

The plaintiff's election to take a conveyance of part of the land was in effect an election to take a satisfaction of damages in the form of land for the violation of the contract and failure to perform the trust created by the agreement of Coffin with the plaintiff. The sole object of the suit being now to obtain relief in damages, the right to prosecute it on the death of the plaintiff was in his personal representatives, and not in his heirs at law or devisees, who would have been necessary parties if it had been a bill for specific performance of a contract to convey land.

Since the remedy of taking the land has become difficult of performance without making the heirs or devisees parties, the plaintiff may withdraw his election, and take compensation in damages. *Ordered accordingly.*

The plaintiff then moved for a final decree, and the defend-ants for a rehearing, upon grounds which appear in the opinion; and these motions were argued together in March 1865.

*Bartlett,* (*Merrill* with him,) for the plaintiff.

*Goodrich, Curtis & Paine,* for the defendants.

BY THE COURT. The questions that have now been presented

and argued make it necessary for us to refer briefly to the history of the case. The original bill was filed on the 24th of January 1851, more than fourteen years ago. At November term 1853 the cause was heard before Mr. Justice Bigelow upon its merits, and certain questions were reported for the consideration of the full court. The report is in the handwriting of the defendants' counsel, and the questions are carefully stated, and present the substantial merits of the case. At March term 1855 the cause was argued before the full court, and after holding the case under advisement for a year, an elaborate opinion was prepared by Mr. Justice Thomas, which contains a full statement of the case. The bill was sustained, and the cause was then referred to a master to take an account of all sums due from the plaintiff to the defendants, or either of them, and of all sums which had been received by the defendants or either of them, which ought to be credited to the plaintiff. The master was obliged to investigate the proceedings of many persons for a long period of time, and his report was not made till December 1861. Exceptions were taken to the report, and were argued in November 1862. The exceptions were overruled, and the report was recommitted to the master to prepare the form of a deed to the plaintiff, and to find the value of the land at certain specified periods. The latter finding had become important in consequence of the fact that March had deceased in 1857.

At April term 1863 the death of the plaintiff Pingree was noticed; and after argument his executors have been admitted to prosecute the suit. In January 1864 the defendant Smith died, but that fact has created no embarrassment, as no decree was sought against him. In March 1864 the defendant Coffin died; but his executrix has been summoned in, and it has been decided after argument that the suit may be prosecuted against her for damages. She has filed a petition for a rehearing of the cause, and Pingree's executors move that a final decree be entered. Upon this petition and motion several questions have been presented and argued.

1. The defendants contend that this is a suit to redeem a chattel mortgage; and that when the bill was filed the court had

no jurisdiction of such a suit in equity. The objection is based upon the first interlocutory decree, which states that the instrument which was delivered by Coffin to Smith, dated August 31st 1844, was a mortgage. But upon a recurrence to the opinion of the court, we find it was decided that Veazie's first assignment of the Commonwealth's bond to Coffin was a mortgage; that the second assignment conveyed to Coffin the equity of redemption, and that by the instrument dated August 31st 1844 Coffin agreed to hold the equity in trust for Smith, and became his trustee in that respect. The object of the suit is therefore to enforce the execution of a trust; and the phraseology of the decree, not being in conformity with the decision, is erroneous and should be corrected. The question of jurisdiction therefore does not arise.

2. It is objected that if Smith was not a mortgagor, his rights were forfeited by the nonpayment at maturity of the notes mentioned in his contract. But we can see no reason to change the opinion upon which the suit has thus far been sustained, that time was not of the essence of the contract or trust; and we do not deem it necessary to discuss the evidence of waiver, which is referred to in the argument for the plaintiff.

3. It is contended that the bill should be dismissed because the plaintiff was guilty of laches in not endeavoring to enforce his rights at an earlier day.* This point was taken at the first hearing, but does not appear to have been reserved for the full court. If there was any mistake in respect to this, it should have been corrected before the reference to the master in 1856. It would be unreasonable to reopen it at this late day, and difficult to investigate it properly if it were reopened.

4. Certain technical objections are urged against the pleadings. But all objections of this character were open in the early stages of the cause, and should be regarded as having been

---

* Upon this point the defendants' counsel referred to *Boston & Maine Railroad* v. *Bartlett*, 10 Gray, 384, & cases there cited; *Fuller* v. *Hovey*, 2 Allen, 324; *Boone* v. *Missouri Iron Co.* 17 How. 340 ; *King* v. *Hamilton*, 4 Pet. 311 ; 1 Story on Eq. (8th ed.) § 736; and some of the authorities cited *ante*, 290, note.

either waived or decided, when the reference was made to the master. The merits of the case were then settled; and nothing remained but to settle details.

It has not been the practice of this court to rehear the parties upon questions which have once been argued and decided, unless there is apparent error. The mere fact that the decision relates to legal principles upon which learned counsel may differ from the court, and may fortify their opinions with reasons and authorities entitled to much consideration, is not enough. After questions of law have once been argued and decided in the progress of a suit in equity, public policy requires that, as a general rule, the decision shall be regarded as final, although the decree that is based upon it is merely interlocutory. In the present case, the court, after a careful revision of the case, can see no good reason for any further hearing of the questions which the defendants desire to present. Most of them were thoroughly argued and considered many years ago, during the lifetime of the original parties to the suit; and very expensive hearings have been had in pursuance of the decrees then made.*

The court are of opinion that the plaintiff is now entitled to a final decree for damages. It appears by the master's report that during the pendency of the suit, Coffin transferred the title which the Commonwealth then had to the land, to Jewett & March. He thus disabled himself from making a conveyance to the plaintiff, and thus performing the trust. March afterwards died out of the Commonwealth, and his undivided fourth part descended to his heirs; and both they and the land are without the jurisdiction of the court. It has thus become impossible to enforce a specific performance of the trust in respect to this undivided fourth part of the township; and the plaintiff is not bound to accept a specific performance as to the remaining part only.

---

* The plaintiff's counsel cited 1 Hoffm. Ch. Pract. 502; *Gibson* v. *Crehore*, 5 Pick. 156; *Jenkins* v. *Eldredge*, 3 Story R. 304. The defendants' counsel contended that on a motion for a final decree they had the right to be heard upon any matter involved therein; and referred to *Adams* v. *Claxton*, 6 Ves. 230; *Park* v. *Johnson*, 7 Allen, 381, 382; and cases cited *ante*, 315.

It remains to determine the amount of damages to which the plaintiff is entitled. In doing this we are not to regard the suit as having been brought originally to recover damages for the non-performance of a contract. Its purpose to enforce the specific performance of a trust must be kept in mind. The defendant Coffin was bound to see that the title of the Commonwealth should be transferred to the plaintiff after obtaining payment of the sums that were due to him and to the Commonwealth. He already had in his hands, when the bill was filed, a large sum that he had received, and other large sums were due to him for timber that he had, by the consent of the plaintiff, permitted various persons to cut upon the land. Jewett & March had been connected with him in these transactions. The master has found that they had received for the proceeds of stumpage, on the 18th of December 1841, not only a sufficient sum to discharge all the debts and liabilities of the plaintiff, but a large balance besides. This balance the plaintiff was entitled to recover, in addition to the land.

But afterwards, namely, on the 2d of November 1853, Coffin wrongfully caused the title to be transferred to Jewett & March, and the plaintiff became thereby entitled to recover the value of the land at that time.

The decree against Jewett should be only for the value of the undivided fourth part which was conveyed to him. For this part Coffin became jointly liable to the plaintiff with him. For the other undivided fourth part which was conveyed to March, Coffin alone has been liable since the decease of March. A final decree should be made in conformity with this decision, with interest and costs.          *Final decree for the plaintiff.*

## MEMORANDUM.

ON the first day of January 1859, Mr. Justice THOMAS resigned the office of justice of this court, which he had held since the twenty-eighth day of January 1853.